Chief Justice Marshall
delivered the opinion of the Court.
On the 23d day of August, 1854, Kollerts, then occupying a business house in Louisville, under alease from Stilwell, mortgaged to Mrs. Fisher, to secure a debt of $600 due twelve months afterwards, besides a few articles of household furniture, the fixtures ia his store, and all his stock of cloth and ready-made clothing therein. On the 6th of October, 1855, Mrs. Fisher filed her petition claiming said debt of $600, and $150 in addition, and referring to the mortgage, and upon the averment that Kollerts was about to sell and dispose of his property with the fraudulent intent to cheat, hinder, and delay his creditors, prayed for an obtained and attachment, which, on the same day, was levied by the marshal on the furniture and fixtures of the defendant on the demised premises. ' On the same day, after the levy of the attachment, and after the sun was down, Stilwell sued out a distress warrant for $344 20, as rent of the house referred to up to the 1st day of October, 1854, due and in arrear, and payable in money.— The distress warrant was levied on the same evening on the attached goods in the hands of the marshal ; but the proceedings on the distress warrant, and the claim of rent, were not noticed in the attachment suit until the 15th of December, 1854, prior to *404 which time a sale of the attached goods, ordered on the 20th of October, had been made and reported, and the proceeds, in the form of cash and bonds, were in court. On the 15th of December, 1854, the administrator of Stilwell filed the claim for rent, evidenced by the distress warrant and the return of its levy, and an accompanying affidavit in support of the claim. On the 9th of March, 1855, the plaintiff was ordered to make Stilvvell’s administrator a defendant, which was done by amended petition, filed on the 23d of that month, and on the same day the administrator filed his answer, denying that the attached goods were included in the mortgage, which had been alleged for the first time in the amended petition, and claiming the prior lien for the rent, 'fhe answer states that the house was rented at $350 a year, and that on the 1st of October, 1854, $344 20, subject to a credit of $4, were due for the rent of one year preceding that date, and that the marshal had retained possession of. the house for one month, (for the purposes of the attachment,) and $29 15 are claimed on that account, making altogether $369 35 claimed out of the pi*oceeds of the attached goods then in the possession or under the control of the court.
It was proved that Kollerts had been in possession of the house from the 1st of July, 1850, under a rent of $350 a year, payable monthly, and that on the 1st of October, 1854, $344 20, subject to a credit of $4, were due. The court decreed to the administrator $369, with interest from the 1st day of November, 1854, to be first paid out of the fund in court, and that the plaintiff Fisher might withdraw the residue, which being insufficient to satisfy her demand, she has appealed to this court, complaining of the postponement of her demand.
The question of priority is to be determined by the Revised Statutes on the subject of landlord and tenant, the 2d article of which, from the 1st to the 20t.h sections inclusive, contains the provisions applicable *405 to the subject. The 11 th section allows distress to be made for rent at any time within six months after it becomes due, and not afterwards. The 12th section authorizes the levy of the distress or attachment for rent upon any personal estate of the lessee or his assignee or under-tenant found on the premises, or which may have been removed within fifteen days, and make the distress or attachment binding upon such estate, which is understood to give to it a lien from the time it comes to the officer’s hands. The 13/ii section provides that if such personal estate, when brought upon the premises, be subject to a lien valid against the creditors of the lessee or assignee, his interest only shall be subject to distress or attachment The 14th section confines the exclusive lien under under the warrant (of distress or attachment) — 1st. To the produce of the premises. 2d. To fixtures. 3d. To household furniture; and 4th. To such other personal property as is acquired before he takes possession, and denies such lien for more than one year’s rent due or to become, and for any rent which has been due more than four months. The Ihth section provides that if a bona fide lien be created upon the personal property while it is on the demised premises, the property shall be subject to distress or attachment for not more than one year’s rent, whether it shall have accrued before or after the creation of such lien. The 16th, 17th, and 18th sections need not be stated. The 19th section provides that if after the commencement of the tenancy a lien be created on the property liable for rent on the premises, the party making or acquiring the lien may remove the property from the premises by [paying of the rent, so much as isin arrear, and securing so much as is to become due, not exceeding, altogether, one year’s rent, and not otherwise. The 29th section provides that if the property found on the premises be taken under an execution or order sf sale or attachment, the rent, payable in money, jot exceeding one year’s rent in arrears, shall be *406 paid by the officer out of the proceeds of sucb property.
1. The lien of ihe landlord upon property brought upon leased premises is only upon the interest which the lessee has in the property. And by the 14th section of the Statute. (Revised Statute, p. 441,) the exclusive lien of the hind-lord is confined to the produce of the premises, fixtures, household furniture, and to such other personal property as is acquired before the tenant tabes possession. The J5th section of said act secures to the landlord one year’s rent, against incumbnmces given upon personal property after it is upon the premises, whether the rent accrue before or after the creation of the lien, and which shall not have been due more than four months. These pe'iods of one year and four mouths have reference to the levy of the warrant. ■
and i5th section» of the act concerning land lord and tenant are to be so eonmonlLTa^the latter so qualifed as to ¿acmonize with the f bpccies ot prop— erty, therefore, ed Tn1 the 15th ?ectl0n j,s sub" ject t0 jfog ex_ elusive lien unthe time wben the rent >n ar~ rear becomes i4t¿ section, son the 19th a^d 2Uth sections,
*406 The first remark to be made on these sections is that while all the personal estate of the tenant found on premises is linbfe to distress, the exclusive lien of the landlord, under his warrant, is confined to certain property described in the 14th section, and is limited to one year’s rent due and to become due, and does not exist as to rent which has been due more than four months, although there may be a distress warrant for any rent which has been due for more than four and less than six months. 2d. Ashy the 14th section the exclusive Hen of the distress warrant is confined to certain property, its priority, except as derived from its being levied or having come to the officers bands before any other lien has attached, is, under the 14th section, confined to the same property; and if there be other property the landlord has no exclusive Hen upon it. and therefore any Hen existing before and at ihe date of the warrant upon such other property must, according to this provision, prevail against the warrant; and even the. exclusive lien of the warrant cannot prevail except for one year’s rent, nor for any rent which has been due more than four months. These periods of one year and of four months are understood to refer to the date or levying of the warrant, and substantially to the time when the conflict commences, by the assertion or attempted enforcement of one of the opposing liens. 3d. Under the 14th section there being no exclusive lien in favor of the landlord’s warrant — that is, no lien independent- of its date except upon the designated property — it follows that if before the date of the warrant an adverse Hen, by other process, be created upon the.tenant’s properly, though on the demised premises, such adverse Hen is entitled to the precedence, except to the extent of the exclusive lien as defined in the section.
But ihe very next section declares that if a bona\ fide lien be created on the tenant’s personaL estate,] *407 while on the premise,s, the estate shall be liable to distress or attachment, but not for more than one year’s rent, referring, as we understand, to one year either ended or current at the time of conflict. It would seem, from this provision, that the adverse lien created while the property is on the demised premises, must, to the extent of one year’s rent due . , ,. , , or accruing, yield absolutely to the distress or attachment, which, if this beso, has all the effect of an exclusive lien, without regard to the specific articles of property involved in the conflict, orto the time when the rent may have become due. although the . J ° immediately preceding section declares that there shall be no exclusive lien except upon specially defined property, nor for any rent which has been due . , i mi • i more than tour months, lhe two sections understood literally are absolutely irieconcilable, and they can only be made consistent with each other by understanding the words of one or the other in a qualified sense, and thus producing a modification of one or both, which shall make them harmonize. The specific language and provisions of the 14th section do not, while the more general terms and provisions of the 15th section do, admit of such qualification as would produce this effect; and as the order in which the sections are placed authorizes the inference that the ideas and principles which were definitely fixed and distinctly expressed in the 14th section, were still in the minds of the framers of the statute 'when they drafted the 15th, we think the latter should be so qualified as to accord with the principles of the former, rather than to nullify or disregard the distinct and precise discriminations of the former. We therefore construe the 15th section as relating to the same description of property or estate which is described in the 14th as subject to the exclusive lien, and consider it as continuing, impliedly and necessarily, the same limitation as to time within which the rent in arrear must have become due, m order to entitle it to the preference, declared by the 15th section. And *408 for similar reasons we construe the 19th section, when speaking of property liable for rent, and postponing, for the benefit of the landlord, the adverse lien created during the tenancy, as referring to property upon which there is an exclusive lien under the 14th section. The 20th section is susceptible of a similar construction, and should receive it. A different construction would lead to the absurd consequence that although the landlord cannot, by distress, exclude or postpone any existing adverse lien, except as to particular property, nor even then for more than one year’s rent, nor for any rent which has been due more than four months, he is yet entitled, as against all opposing liens upon every kind of personal estate upon the demised promises, to the same exclusive benefit; and if the limitation of four months be not applied to a greater lien with regard to property, as to which he has no exclusive lien. There can be no reason for restricting his lien under his warrant to certain property, and yet making it superior as to all property on the premises, to any other claim or lien asserted by another.
In this case the answer denies that the attached property is included in the mortgage, and there is no proof nor presumption that it was acquired before the tenancy commenced. The administrator therefore could not, under our construction of the statute, have been entitled to precedence, on account of his demand against Kollerts, except as to the proceeds of the fixtures and of the furniture, if any, on the demised premises; and as these proceeds, together with the rent accruing after the attachment, for which he is also entitled to precedence, are much less in amount than the sum decreed, the decree is, to the extent of this difference, erroneous.
■Wherefore the decree is reversed, and the cause remanded for a decree in conformity with this opinion.